**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SERROD BURNETT** | ) | |
| **#202100056977,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:22-cv-00223** |
| | ) | |
| **v.** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Newbern** |
| **DUSTY RHOADES, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Serrod Burnett, a pre-trial detainee currently in the custody of the Williamson County Sheriff's Office in Franklin, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. No. 1). The plaintiff now has filed an amended complaint. (Doc. No. 8). The amended complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

1

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."   To state a claim under Section 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III.     Alleged Facts

This action concerns the plaintiff's medical treatment since November 7, 2021, when he was booked at the Williamson County Sheriff's Office (referred to as "the jail" going forward). (Doc. No. 8 at 6). The plaintiff alleges that he has asthma, a condition that requires him to be medicated with albuterol during "flare ups." (*Id*. at 7). The plaintiff is supposed to receive albuterol

2

via an inhaler "twice a day[,] two pumps morning and night." (*Id*.) According to the plaintiff, his asthma has been documented in jail medical records since November 7, 2021.

At the jail, there is no set time for "Med Pass," which appears to be when inmate medications are distributed. (*Id*.) On March 9, 2022, the plaintiff was taking a shower when the evening "Med Pass" was announced, and he missed the distribution of his asthma medication. The plaintiff requested for Nurse Tonja to make a second "Med Pass" by speaking with two floor deputies, one of whom was Deputy T. Macraine. The plaintiff believes Nurse Tonja intentionally failed to make a timely second "Med Pass" as an act of retaliation because she knew the plaintiff was the only inmate who had not received his medication and that the plaintiff had helped another inmate file a grievance against her "because she gave inmate T. Bostic the wrong medication during the night shift Med Pass on January 17, 2022." (*Id*. at 8). Later that night, Nurse Tonja brought the plaintiff's hypertension medications to him but failed to bring the albuterol. According to the plaintiff, Nurse Tonja knew the plaintiff needed his albuterol. The plaintiff "had serious difficulties breath[ing] all night (Wheez[ing]/Asthma Attack)." (*Id*. at 9).

The plaintiff filed a grievance on March 10, 2022, about the March 9, 2022 incident with Nurse Tonja. Administrative Nurse Kristin undertook the investigation and "took sides with Med Pass Nurse Tonja." (*Id*.) The plaintiff believes that Administrative Nurse Kristin was not neutral in her investigation and failed to hold Nurse Tonja accountable because the plaintiff has sued Administrative Nurse Kristin in another federal civil rights action. The plaintiff sought an appeal of the denial of his grievance, but Administrative Nurse Kristin closed the process and refused the plaintiff's appeal.

The plaintiff also mailed a "letter of complaint" about the incident to the Williamson County Sheriff and he never responded. (*Id*. at 6).

As relief, the plaintiff requests monetary damages, a court order directing the jail to allow inmates with asthma access to their albuterol inhalers, and a court order "reminding the defendants that retaliation on inmates for filing grievances and Section 1983 complaints against WCSO and other staff members or employees is not going to be accepted or tolerated." (*Id*. at 6).

## IV.    Analysis

The plaintiff brings this action against Williamson County Sheriff Dusty Rhoades, Williamson County Deputy Sheriff T. Macraine, Nurse Tonja, and Administrative Nurse Kristin in their individual and official capacities. (*Id*. at 1-3).

### A.    Inadequate Medical Treatment

#### 1.    Individual Capacity Claims

The plaintiff is a pretrial detainee asserting claims for inadequate medical treatment. "[P]retrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth Amendment." *Greene v. Crawford Cnty.*, Mich., --- F.4th ----, 2022 WL 34785, at *7 (6th Cir. Jan. 4, 2022) (citing *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020)). This claim has objective and subjective components. *See id.* at *8. The objective component requires a plaintiff to demonstrate that he had an "objectively serious medical need." *Id*. (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021)). The subjective component, as recently modified by the Sixth Circuit, "require[s] only recklessness," meaning that a plaintiff must prove that the defendants' "'action (or lack of action) was intentional (not accidental) and [they] either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to' the detainee." *Id*. (quoting *Brawner*, 14 F.4th at 597)

4

With regard to the objective component, because the plaintiff's asthma was diagnosed by a physician, and medication was prescribed to treat it, he suffered from a serious medical need at the time of the events in question. *See, e.g., Taylor v. Boyd*, No. 06-2412-JPM-dkv, 2008 WL 3852184, at *11 (W.D. Tenn. Aug. 15, 2008) (citing *Saylor v. O'Dea*, No. 96–6685, 1997 WL 693065, at *1 (6th Cir. Oct. 31, 1997) and *McLain v. Secure Care, Inc.*, No. 04-73744, 2007 WL 1219048, at *3 (E.D. Mich. Apr. 24, 2007)).

With regard to the subjective component, the amended complaint alleges that Nurse Tonja was personally aware of the plaintiff's medical need for an inhaler and refused to provide it to the plaintiff in retaliation for the plaintiff having assisted another inmate with filing a medical-related grievance against Nurse Tonja. For purposes of the initial review, these allegations are sufficient to satisfy the subjective component of the claim against Nurse Tonja. *See Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (internal citations and quotation marks omitted) (explaining that, although "federal courts are generally reluctant to second guess medical judgments" "where a prisoner has received some medical attention," delaying medical treatment of "a prisoner's obvious and serious need . . . for non-medical reasons . . . creates [a] constitutional infirmity"). Thus, accepting the plaintiff's allegations as true, the court finds that the amended complaint states a Fourteenth Amendment claim under Section 1983 against Nurse Tonja in her individual capacity for constitutionally inadequate medical care.

Because the court "cannot 'impute knowledge from one defendant to another[,]'" the court must evaluate the subjective component of this claim for "'each defendant individually[.]'" *Greene*, 2022 WL 34785, at *9 (quoting *Speers v. Cnty. of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)). The plaintiff does not allege that Sheriff Rhoades was personally involved in any of the events alleged in the amended complaint other than failing to respond to the plaintiff's letter about the

March 9, 2021 incident. However, even under the liberal standards for pro se pleadings, the plaintiff's allegations are insufficient to state a claim against the Sheriff. "[A] prisoner has no constitutional right to an effective prison grievance procedure." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017). *See Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019).

The plaintiff's only allegation of Nurse Kristin's involvement is that she investigated the plaintiff's grievance against Nurse Tonja and found against the plaintiff. The plaintiff's only allegation against T. Macraine is that the plaintiff asked him for assistance; the amended complaint does not allege what T. Macraine did or did not do in response to the plaintiff's request. The amended complaint does not explain how either Nurse Kristin or T. Macraine was involved in the plaintiff's medical care. These allegations, without more, do not allow the court to reasonably infer that Sheriff Rhoades, Nurse Kristin, or T. Macraine was aware of the plaintiff's serious medical need. Thus, the amended complaint fails to state Fourteenth Amendment claims under Section 1983 against Williamson County Sheriff Dusty Rhoades, Williamson County Deputy Sheriff T. Macraine, and Administrative Nurse Kristin in their individual capacities. These claims will be dismissed.

## 2.     Official Capacity Claims

Next, the court will consider the plaintiff's official capacity claims against all named defendants. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It is clear from the amended complaint that Sheriff Rhoades and T. Macraine represent Williamson County, Tennessee, and Nurse Tonja and Administrative Nurse Kristin represent Southern Health Partners. (Doc. No. 8 at 2-3).

6

To state a Section 1983 claim against a governmental entity like Williamson County, a plaintiff must allege that the asserted constitutional deprivation he suffered was directly caused by a county policy or custom. *Hardrick v. City of Detroit, Mich*., 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-92 (1978)). Here, even liberally construing the amended complaint, the plaintiff does not make any allegations from which the court can reasonably infer a policy or custom attributable to Williamson County. The plaintiff therefore fails to state a claim against Williamson County, and his official-capacity claims against Sheriff Rhoades and T. Maclaine will be dismissed. With no viable claim against either Sheriff Rhoades or T. Maclaine in his individual or official capacity, Rhoades and Maclaine will be dismissed as defendants.

According to the complaint, Southern Health is the entity responsible for providing medical care to inmates at the jail. Because Southern Health performs a traditional state function in providing medical care to state inmates, Southern Health acts under the color of state law. *Street v. Corr. Corp. of Am*., 102 F.3d 810, 814 (6th Cir.1996). In order for Southern Health to be liable under Section 1983, the plaintiff must allege that there is a direct causal link between a policy or custom of Southern Health and the alleged constitutional violation. *See Monell,* 436 U.S. 658, 691; *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty*., 606 F.3d 240, 255 (6th Cir. 2010)). In other words, Southern Health may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr*., 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Southern Health liable, the plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Southern Health's policies are shown to be the "moving force" behind the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, the plaintiff makes no allegation regarding a "policy or custom" of Southern Health Partners. The plaintiff therefore fails to state a claim against Southern Health Partners, and his official-capacity claims against Nurse Tonja and Administrative Nurse Kristin will be dismissed. With no viable claim against Administrative Nurse Kristin in her individual or official capacity, Nurse Kristin will be dismissed as a defendant.

### B.     Retaliation Claims

The amended complaint also alleges that Nurse Tonja refused to provide the plaintiff with his needed albuterol inhaler on March 9, 2022 in retaliation for the plaintiff having assisted another inmate to file a medical-related grievance against Nurse Tonja.

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing

other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396. A plaintiff has the burden of proof on all elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

First, the plaintiff's act of assisting another inmate with filing a grievance is protected speech under the First Amendment. *See Thaddeus-X*, 175 F.3d 378 (holding that an inmate who assisted another inmate in filing a legal action was engaged in "protected conduct" for purposes of retaliation claim); *Meeks v. Schofield*, 10 F.Supp.3d 774, 778 (M.D. Tenn. 2014) (citing *Thaddeus-X* for same proposition).

Second, the adverse action of being deprived of one's prescribed medication during an asthma attack would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed").

Third, the plaintiff alleges that Nurse Tonja's refusal to provide the plaintiff with albuterol soon followed his assistance to inmate Bostic with filing a grievance against Nurse Tonja. *See Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010) (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Thus, the court finds that the plaintiff's allegations of retaliation are sufficient to state a nonfrivolous Section 1983 claim of First Amendment retaliation against Nurse Tonja in her individual capacity. Of course, the plaintiff will bear the burden of supporting his allegations with evidence as this case progresses, but these allegations are sufficient to survive the screening required by the PLRA.

9

For the same reasons outlined by the court above, the retaliation claim against Nurse Tonja in her official capacity fails to state a claim upon which relief can be granted under Section 1983. That claim will be dismissed, but the plaintiff's retaliation claim against Nurse Tonja in her individual capacity will proceed.

## V.     Conclusion

For the reasons explained above, the court finds that the amended complaint states a colorable Fourteenth Amendment claim and First Amendment claim under Section 1983 against Nurse Tonja in her individual capacity. These claims will proceed.

However, the amended complaint fails to state colorable claims under Section 1983 against the remaining defendants. Those defendants and claims will be dismissed.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge

10